UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN NICHOLS,

           Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

           Defendant.

_____/

Civil Action No.: 16-14072
Honorable Marianne O. Battani
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 17, 18]**

Plaintiff Karen Nichols appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental social security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is not supported by substantial evidence, and thus **RECOMMENDS** that:

- Nichols's motion [ECF No. 17] be **GRANTED**;

- the Commissioner's motion [ECF No. 18] be **DENIED**; and

- the Commissioner's decision be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Background and Disability Applications

Nichols was born on May 25, 1963, making her 49 years old on her alleged onset date of May 31, 2012. [ECF No. 11-3, Tr. 49]. She submitted applications for disability benefits in January 2014 and was insured for DIB purposes through June 30, 2017. [*Id.*; ECF No. 11-5, Tr. 157, 164]. She has a high school education and prior work history as a answering service secretary. [ECF No. 11-2, Tr. 26; ECF No. 11-6, Tr. 184]. She alleged disability due to "congestive heart failure, high blood pressure, anxiety, depression, severe back pain, bleeding ulcers, kidney injury, [and] abdominal pain." [ECF No. 11-6, Tr. 183].

After the Commissioner denied her disability application initially, Nichols requested a hearing, which took place in October 2015, during which she and a vocational expert (VE) testified. [ECF No. 11-2, Tr. 34-57]. In a November 24, 2015, written decision, the ALJ found Nichols to be not disabled. [*Id.*, Tr. 19-28]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Nichols timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

**B.    The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Nichols was not disabled. At the first step, she found that Nichols had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 11-2, Tr. 21]. At the second step, the ALJ found that Nichols had the severe impairments of congestive heart failure, depression, anxiety, osteoarthritis, and hypertension. [*Id.*]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 22].

Between the third and fourth steps, the ALJ found that Nichols had the RFC to perform light work as defined by 20 C.F.R. §§ 404.1527(b), 416.927(b), with the additional limitations of:

> Claimant can sit, stand, and walk six hours in an eight hour workday. Further, Claimant can understand and remember

4

> simple instructions, make judgments commensurate to unskilled tasks, such as work related decisions, must avoid tasks that require prolonged attention and concentration, but has sufficient attention and concentration to perform simple 1-2 [step] tasks on a routine, regular basis.

[*Id.*, Tr. 23]. At the fourth step, the ALJ concluded that Nichols could not perform her past relevant work. [*Id.,* Tr. 26]. At the final step, after considering Nichols's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that Nichols could perform work in occupations such as bench assembler, packer, and sorter, which exist in significant numbers in the national economy. [*Id.*, Tr. 27].

## II.    ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Nichols argues that the ALJ violated the treating physician rule, failed to give good reasons for discounting physician's opinions and relying on the opinion of a nonexamining source, and that the RFC is not supported by substantial evidence from the medical record. The Court agrees that substantial evidence does not support the RFC, and recommends remand of the ALJ's decision.

**B.**

Regarding her physical impairments, Nichols contends that the ALJ violated the treating physician rule by failing to give controlling weight to the treating physician opinion of Alexander Malayev, M.D. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the

6

specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).

Dr. Malayev's opinion was related on a checkbox form, with no written explanations given for the restrictions that were checked or circled therein. [ECF No. 11-14, Tr. 762-63]. He opined that Nichols could sit for three hours, and "stand and/or walk" for less than one hour on a sustained basis in an eight-hour workday, and that she could occasionally lift up to ten pounds but never more, and could not frequently lift any amount of weight. [*Id.*, Tr. 762]. He also stated that even one twenty-minute rest period per hour would not be satisfactory for her in a working environment, that she would need "complete freedom to rest frequently without

7

restriction," and that she would need to "lie down for substantial periods of time during the day." [*Id.*, Tr. 763].

The Commissioner correctly points out that in this circuit, checkbox forms such as Dr. Malayev's need not be afforded great weight when they "consist simply of forms in which spaces are filled out and boxes are checked off." *Rogers v. Comm'r of Soc. Sec.*, 225 F.3d 659 (6th Cir. 2000). Courts in this circuit have held that a medical source statement in "check-the-box" format, by itself, provides little to no persuasive value—"to hold otherwise would neglect its glaring lack of narrative analysis." *Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017); *see also Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) ("[T]he administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence.").

But while the ALJ may have had good reason for not giving controlling weight to Dr. Malayev's opinion, his decision is not supported by substantial evidence because he appears to have ignored evidence related to Nichols's back impairment. Substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the

record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted). In his decision, the ALJ noted that an x-ray revealed degenerative changes, and treatment notes confirmed a lumbar herniated disc, but that multiple physical exams showed full strength bilaterally and a normal range of motion. [ECF No. 11-2, Tr. 24, 25, citing ECF No. 117-, Tr. 253; ECF No. 11-11, Tr. 563; ECF No. 11-12, Tr. 583; ECF No. 11-13, Tr. 689]. The x-ray also revealed no evidence of acute fracture or subluxation. [ECF No. 11-11, Tr. 563]. That was all of the evidence cited regarding Nichols's back impairment, but substantially more evidence existed in the record.

In fact, as Nichols points out, one of the records cited to by the ALJ noted paravertebral spasm, restricted range of motion of her spine, limited spinal, rib and pelvis stability, and diminished strength and tone in the spine, ribs, and pelvis due to pain, along with neurological left-sided weakness, contradicting the ALJ's claims. [ECF No. 11-13, Tr. 689]. Nichols also notes that the other two records cited by the ALJ were for office visits unrelated to back pain. [ECF No. 11-7, Tr. 251-54; ECF No. 11-12, Tr. 581-84]. And Nichols cites to records of 18 visits to Dr. Malayev for back pain on a monthly basis between May 2014 and August 2015, with moderate low back tenderness, muscle spasm, and mild positive straight

9

leg raising bilaterally being noted at each visit. [ECF No. 11-14, Tr. 718-53]. Prior to that, Nichols was seen by Rica Stamatin, M.D., at least 21 times from March 2012 to January 2014, with abnormal spinal examination results and reduced range of motion being noted on every visit. [ECF No. 11-11, Tr. 523-61].

The Commissioner cites to additional records not referenced by the ALJ that showed normal ranges of motion, normal strength in extremities, and negative straight leg raising tests, but most of those visits were for abdominal pain, diarrhea, and/or nausea, and some of the records cited are redundant copies of one another. [ECF No. 11-8, Tr. 317; ECF No. 11-9, Tr. 418; ECF No. 11-10, Tr. 494; ECF No. 11-12, Tr. 587, 605, 617]. But, as stated before, this Court cannot find that substantial evidence supports the ALJ's decision based upon the fragments of the evidence the Commissioner cites; the Court must take into account the records cited by Nichols that discredit the ALJ's decision. *Garner.* 745 F.2d at 388. Furthermore, in reviewing the ALJ's findings and conclusions, the Court need not accept the Commissioner's "*post hoc* rationalization for agency action in lieu of accurate reasons and findings enunciated by the Board." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (internal quotation marks, brackets, and citation omitted). Where, as

here, there is substantial doubt that the ALJ's decision would be the same without the errors, remand for further consideration is warranted. *Id.*

## C.

Nichols also argues that the opinions about her mental impairments from non-treating physicians were improperly weighed, and that the ALJ ignored critical evidence in coming to his conclusions.

In April 2014, Nichols underwent a psychological examination by Jack Haynes, Ph.D. [ECF No. 11-11, Tr. 573-77]. Dr. Haynes found that Nichols had an appropriate appearance and hygiene, social skills within normal limits, and that her cognitions were spontaneous and not blocked, illogical, or unusually vague. [*Id.*, Tr. 575]. She told him that she was depressed "all the time," cried often but not daily, never felt very happy, and frequently worried. [*Id.*]. He found that her ability to relate to others; to understand, remember, and carry out tasks; and to maintain attention, concentration, and persistence to perform routine tasks appeared mildly impaired. [*Id.*, Tr. 577]. Her ability to handle the stress and pressure of day-to-day work activity appeared markedly impaired. [*Id.*]. The ALJ found Dr. Haynes's opinions to be inconsistent with his findings and assigned little weight to his opinion.

Later in April 2014, state agency consultant Jerry Csokasy, Ph.D., opined based on the then available medical record available, including Dr. Haynes's findings, that Nichols was mildly restricted in activities of daily living and maintaining social functioning, and moderately limited in maintaining concentration, persistence or pace. [ECF No. 11-3, Tr. 62]. He stated that marked limitations were not supported by the medical record, and that Nichols can perform simple/routine tasks on a sustained basis. [*Id.*, Tr. 63]. Her ability to carry out detailed instructions was also found moderately limited. [*Id.*, Tr. 65]. The ALJ gave great weight to this opinion, finding it to be "generally consistent with record evidence of significantly normal findings on mental status exam." [ECF No. 11-2, Tr. 26].

In July 2014, Nichols began seeing Asha Jain, M.D., for psychiatric care. [ECF No. 11-13, Tr. 674-82]. Dr. Jain found her to be depressed, dysphoric, and anxious, with slowed psychomotor activity, delusional thought content, and limited attention/concentration. [*Id.*, Tr. 676-77]. She diagnosed Nichols with major depressive disorder, which was recurrent and moderate, and post-traumatic stress disorder, and gave her a Global

Assessment of Functioning (GAF) score of 50.[3] [*Id.*, Tr. 680]. On subsequent visits, her attention and concentration was at times limited, [*Id.*, Tr. 671], her mood was anxious, dysphoric, [*Id.*, Tr. 654, 669], and/or depressed, [*Id.*, Tr. 654, 662], she had auditory hallucinations, [*Id.*, Tr. 655, 660-62], and her psychomotor activity was slowed at one visit, [*Id.*, Tr. 654], but she had "mind rac[ing] all the time" at another, [*Id.*, Tr. 662]. Nichols was found consistently to have a moderate risk factor. [*Id.*, Tr. 658, 666, 673]. Of Dr. Jain's records, the ALJ cited only to the GAF score of 50, according it little weight, as GAF scores "are found to have very limited probative value in determining [Nichols's] actual functional limitations in this matter." [ECF No. 11-2, Tr. 25].

Lastly, in October 2015, Nichols was assessed by Elaine M. Tripi, Ph.D., a licensed psychologist. [ECF No. 11-14, Tr. 754-61]. She found Nichols to have "classic symptomatology related to major depressive disorder," to also suffer from anxiety, and to have many moderate, marked, and extreme limitations in all areas of functioning. [*Id.*, Tr. 755, 759-61].

---

[3] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.*, No. 11–5424, 461 F. App'x 433, 436 n. 1 (6th Cir. 2012) (citations omitted).

Notably, she found Nichols extremely limited in carrying out detailed instructions, performing within a schedule, completing a normal workday and workweek without interruption from psychological symptoms, and tolerating normal levels of stress. [*Id.*, Tr. 759-61]. The ALJ gave this opinion no weight, finding it to be inconsistent with Dr. Haynes's findings as well as based only on a single evaluation of Nichols. [ECF No. 11-2, Tr. 25].

Generally, an ALJ gives more weight to the medical opinion of an examining source than to that of a nonexamining one. 20 C.F.R. § 404.1527(c)(1). "To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) (citing Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *3). But greater scrutiny is called for regarding the nonexamining source. *Id.* It is clear that the ALJ did the opposite of that here.

In discounting Dr. Haynes's opinion, the ALJ again cited fragments of the record by referring to every normal finding therein, while neglecting to mention a single abnormal finding (e.g., "She stated that sometimes her thoughts race," "she takes a Xanax pill for anxiety at night, but nevertheless

14

typically wakes up off and on throughout the night," "is obsessed that her son will not be the same again," "cries often," "never feels very happy" and "frequently worries." [ECF No. 11-11, Tr. 575]). [ECF No. 11-2, Tr. 24-25]. From this view, the ALJ found Dr. Haynes's conclusions to be contradicted by his own findings. Without comparison to any other medical records, the ALJ then accorded little weight to the opinion. Likewise, the opinion of Dr. Csokasy, who did not examine Nichols, was given great weight for being consistent with the "significantly normal findings" in Dr. Haynes's examination, again omitting any of the abnormal findings. [*Id.*, Tr. 25-26].

Dr. Tripi's opinion, like Dr. Haynes's, was given no weight whatsoever due to its inconsistency with the normal findings from Dr. Haynes's opinion. [*Id.*, Tr. 25]. No mention is made of Dr. Tripi's own abnormal findings—crying spells, interrupted sleep, abnormal appetite, deriving no pleasure from most things, lacking a social life, *et cetera*—that largely mirror the abnormal findings of Dr. Haynes. [ECF No. 11-14, Tr. 754]. Her opinion is also discounted due to its basis—a onetime evaluation—and its recency, having occurred "only two weeks prior to the hearing." [ECF No. 11-2, Tr. 25]. Neither the ALJ nor the Commissioner cite authority that would discount a medical opinion for having occurred more recently, when still well within the relevant period of coverage. Nor is the fact that Dr. Tripi

15

examined Nichols once a good reason for discounting her opinion. "Mental disorders are not uncommonly diagnosed after one interview." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989).

In *Blankenship*, the court emphasized that ALJs should not easily disregard the diagnoses, observations and opinions of trained psychologists.

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Id.* (citations and internal quotation marks omitted). To the extent that the psychologists relied in part on Nichols's subjective complaints, they were acting within their expertise as a trained psychologists. Psychologists "typically treat symptoms that are subjective and just rely on a patient's subjective descriptions to evaluate and diagnose the patient." *James v. Liberty Life Assur. Co.*, 582 F. App'x 581, 588 (6th Cir.2014).

Most egregiously, the ALJ's reasoning in all three instances is based upon a strained and incomplete reading of one set of observations—those of Dr. Haynes. This is confounding, considering that the records of Dr.

16

Jain, a treating source who saw Nichols from July 2014 to September 2015, go unmentioned other than the assessed GAF score, which the ALJ believes provides little probative value. Dr. Jain's records provide objective evidence of depression, anxiety, dysphoria, auditory hallucinations, constricted affect, limited attention and concentration, slowed psychomotor activity, and that Nichols's mind often races. [ECF No. 11-13, Tr. 674-82].

The Court has substantial doubt that the ALJ's decision would be the same without his errors in assessing Nichols's mental impairments. Remand for further consideration is therefore warranted. *Keeton,* 583 F. App'x at 524.

### III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Nichols's motion for summary judgment be [ECF No. 17] be **GRANTED**; that the Commissioner's motion [ECF No. 18] be **DENIED**; and that the Commissioner's decision be **REMANDED** for further proceedings consistent with this report and recommendation.

s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge

Dated: January 25, 2018

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 25, 2018.

                                       s/Marlena Williams
                                       MARLENA WILLIAMS
                                       Case Manager